IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. THOMAS AND ST. JOHN

APPELLATE DIVISION

| | |
|---|---|
| MAURICE RICHARDSON, ) | D.C. App.Crim.App.No. 1997-0015-2 |
| ) | |
| Appellant, ) | |
| vs. ) | Super. Ct. Crim. No. F1/1996 |
| ) | |
| GOV'T OF THE VIRGIN ISLANDS, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Ishmael A. Meyers, Judge Presiding

Considered: January 22, 2010
Filed: September 16, 2011

BEFORE: **RAYMOND L. FINCH,** Senior Sitting Judge of the
District Court of the Virgin Islands; **LEGROME D. DAVIS,**
Judge of the District Court, Eastern District of
Pennsylvania, sitting by designation; and **PATRICIA D.
STEELE,** Judge of the Superior Court, Division of St. Croix,
sitting by designation.

Attorneys:

**Paula D. Norkaitis, Esq.**
**Treston E. Moore, Esq.**
St. Thomas, U.S.V.I.
        For the Appellant,

**Maureen Phelan, Esq. AAG**
**Pamela R. Tepper, AAG**
St. Thomas, U.S.V.I.
        For the Appellee.

**Per Curiam.**

<div style="border:1px solid black;">

**Memorandum Opinion**

</div>

Maurice Richardson ("Richardson") appeals his conviction in the Superior Court of the Virgin Islands for conspiracy to commit murder, murder, and unlawful possession of a firearm.

## I. FACTUAL AND PROCEDUAL BACKGROUND

"After a jury has returned a guilty verdict we are bound to interpret the evidence in the light most favorable to the [G]overnment." *United States v. Wood*, 486 F.3d 781,783 (3d Cir. 2007). With this standard in mind, we offer the following factual background. On March 26, 1994, between 11:00 p.m. and shortly after midnight, Officer Stephen Hodge of the Virgin Islands Police Department ("VIPD") was shot and killed in the front yard of his home in Lindbergh Bay, St. Thomas. (Trial. Tr. vol. 2, 206:12-22, 217:22-23, Aug. 7, 1996.)

Earlier that day, at approximately 5:00 p.m., Gwentin Sellwood ("Sellwood") visited Mosby's clothing store, New York's Latest Fashions, where he saw Mosby with William Vanterpool ("Vanterpool") and Carlos Fleming ("Fleming").

(Trial Tr. vol. 4, 65:1-66:4, Aug. 9, 1996.)  Sellwood

noticed a long gun near Mosby with its handle sawed-off,

and a towel on the back of Mosby's chair.  (*Id.* at 84:1-14,

86:6-13.)

Several witnesses testified at trial to the facets of

the murder that each saw or heard.  Bernice Celestine

("Celestine"), looking out of her window just before 11:00

p.m. on March 26, 1994, testified that she saw three men in

a pick-up truck outside Hodge's home. (Trial Tr. vol. 1, at

172:15-24, 174:22-23, Aug. 6, 1996.)  One of the men got

out of the truck and put an object in the grass near

Hodge's home.  (*Id.* at 175:22-176:13, 181:14-16.)  Shorn

Pennyfeather ("Pennyfeather") testified that he was exiting

his home in Lindbergh Bay around midnight when he heard

gunshots.  (*Id.* at 199:6-8.)  Seconds later, he saw four

men running down the street.  (*Id.* at 199:8-10, 200:4-19.)

The men were dressed in all black with hoods covering their

heads, and two of them were carrying long guns.  (*Id.* at

208:6-12, 208:24.)

An investigation began immediately following the

murder.  VIPD officers and a forensic team arrived at the

scene, removed Hodge's body and gathered evidence,

including shell casings and a towel.  (Trial Tr. vol. 2,

142:6-24, 145:2-46:13, 239:12-21.)  The towel tested

positive for both gun powder and gunshot residue. (Trial

Tr. vol. 3, 251:10-15, Aug. 8, 1996.)  Hodge was shot

fourteen times by four different guns, including a shotgun.

(*Id.* at 61:17, Aug. 8, 1996.)  At some point, Hodge was

shot by a shotgun from a distance of four or five feet

away. (*Id.* at 135.)

The police also obtained information from Athnell

Coker ("Coker").  Four or five days after the murder, Coker

spoke with Appellant Maurice Richardson.  (Trial Tr. vol.

5, 43:10-16, Aug. 12, 1996.)  Richardson told Coker that

that the murder was an ambush attack where he and others

waited in the bushes for Hodge to come out of his home when

they shot him.  (*Id.* at 44:17-18, 45:10-12.)  Richardson

told Coker that when Hodge had fallen to the ground, he

went over the body and shot Hodge with a shotgun. (*Id.* at

64:3-12.)

During this conversation, Richardson asked Coker to

hold the shotgun for him,.  (*Id.* at 45:20-45:24, 49:6-7.)

Coker testified that the shotgun was sawed-off with tape on

the handle and was approximately 20 to 24 inches in length.

(*Id.* at 49-4-20.)  Coker buried the gun behind his house,

and it was later removed by men sent on Richardson's

behalf. (*Id.* at 46:1-5, 54:22-54:24).)  The shotgun has never been recovered.  (*Id.* at 54:24.)

On June 17, 1995, Richardson was arrested and charged with the murder of Steven Hodge.  On August 6, 1996, a joint five-defendant jury trial commenced in the Superior Court of the Virgin Islands.[1]  On August 8, 1996, the Government filed a seven-count superseding information against the defendants.  Richardson was charged with: conspiracy to commit murder (Count I), in violation of Title 14 V.I.C § 551(1); first degree murder (Count II), in violation of Title 14 V.I.C §§ 922(a)(1) and 11; and four counts of unauthorized possession of four separate firearms (Counts III-VI), in violation of Title 14 V.I.C §§ 2253(a) and 11.

On August 19, 1996, the jury returned a guilty verdict on Counts I, II and IV[2] against Richardson and he was later sentenced to life in prison.

---

[1]  At the time of trial, the trial court was known as the Territorial Court of the Virgin Islands, and its judges were referred to as Territorial Court Judges.  Effective January 1, 2005, however, the name of the Territorial Court changed to the Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004).  Recognizing this renaming, we employ the term Superior Court.

[2]  Count IV refers to Unauthorized Possession of a pump action shotgun ("unauthorized possession").

Richardson filed timely motions for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative for a new trial pursuant to Federal Rule of Criminal Procedure 33 and Superior Court Rule 135.  On November 12, 1996, the Superior court denied all post-trial motions.

That same day, Richardson filed a timely notice of appeal challenging the denial of his post-trial motions. On appeal, Richardson challenges his conviction on the following grounds:  (1) error in admitting the testimony of Athnell Coker (2) insufficiency of the evidence to convict him; and (3) violation of his Sixth Amendment right to compulsory due process.[3]

## II.    JURISDICTION

---

[3] Richardson also attempts a wholesale incorporation of the arguments raised in Harris' brief.  Although Federal Rule of Appellate Procedure 28(a)(5) allows one appellant to incorporate the arguments of another by reference, Richardson's blanket adoption of all issues raised by Harris does not suffice.  When the argument an appellant seeks to incorporate by reference is not fact specific, the Third Circuit has held that lower courts may not prohibit adoption of the argument by reference.  U.S. ex rel. LaCorte, SmithKline Beecham Clinical Laboratories, 149 F.3d 227 (3d Cir. 1998).  But many of the factual predicates of Harris's claims on appeal apply only to Harris, not to Richardson, and the Court will not parse the arguments in Harris's 170-page brief to determine which of them might be relevant to Richardson's appeal.  To do so would remove all of Federal Rule of Appellate Procedure 15(b)'s force.  As such, this Court finds Richardson has waived those issues not specifically raised in his appellate brief. *Kost v.* Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993)..

This Court has jurisdiction over appeals of final judgments or orders that were entered before January 29, 2007. *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613(a); Act of Oct. 29, 2004, No. 6687, sec. 6, § 2, 2004 V.I. Legis. 6687 (2004); *see also Joseph v. People of V.I.*, No. 2005-13, 2008 WL 5663569, at *5 (D.V.I. App. Div. Dec. 9, 2008).[4]

## III. ANALYSIS

### A. **The Sixth Amendment Right to Compulsory Process**

Richardson argues that the trial court violated his Sixth Amendment right to compulsory process when it (1) ruled that Vargas Paniagua was an unavailable witness and (2) excluded the tape-recorded conversations allegedly between Paniagua and SKS as inadmissible hearsay.[5] The Government responds that Richardson's right to compulsory due process was not violated because the Government was not responsible for Paniagua's failure to appear at trial;

---

[4]  The Court's jurisdiction to review criminal judgments and orders of the Superior Court is limited to cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. Code Ann. tit. 4, § 33 (2006); 48 U.S.C. § 1613(a) (2006).

[5]  In his Brief, Richardson assigns both constitutional and evidentiary error to the trial court's rulings on Paniagua's availability and the admissibility of the tape recordings. Because the compulsory process rubric established by the Supreme Court and the Third Circuit incorporates the evidentiary challenges asserted here, *see Gov't of V.I. v. Mills*, 956 F.2d 443 (3d Cir. 1992), we review both of Richardson's claims under this framework.

Paniagua was not a favorable witness; and the tape-recorded statements were inadmissible hearsay. Our review as to whether the trial court violated Richardson's Sixth Amendment right is plenary. *United States v. Sanford*, 173 F. App'x 943, 946 (3d Cir. 2006) (citing *United States v. Tyler*, 164 F.3d 150, 156 (3d Cir. 1998)). After reviewing Richardson's constitutional challenges, we find that both of his claims fail.

The Sixth Amendment guarantees the accused in a criminal prosecution the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Supreme Court "has extended the Compulsory Process clause to cover a criminal defendant's right to present witnesses or evidence in his defense, 'even though [such a right] is not expressly described in so many words.'" *Gov't of V.I. v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992) (quoting *Taylor v. Illinois*, 484 U.S. 400, 409 (1988)). However, this right is not absolute. For a criminal defendant to establish that he was convicted in violation of his right to compulsory process, he must satisfy the three-part *Mills* test: "[f]irst, that he was deprived of the opportunity to present evidence in his favor; second, that the excluded testimony would have been material and

favorable to his defense; and third, that the deprivation

was arbitrary or disproportionate to any legitimate

evidentiary or procedural purpose." *Id.* at 446 (citing

*Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). We now consider

each of Richardson's challenges.

### 1. Paniagua's In-Court Testimony

Richardson argues that the trial court violated his

Sixth Amendment right to compulsory process by failing to

compel Paniagua to testify at trial. For the reasons

below, we find no constitutional violation.

During the course of an unrelated DEA investigation,

Paniagua allegedly admitted to his involvement in the

murder of Officer Hodge. Immediately before trial, Mosby

filed, and the trial court executed, a writ of habeas

corpus ad testificandum to secure the attendance of Vargas

Paniagua to testify at trial. (Writ of Habeas Corpus Ad

Testificandum, July 30, 1996 (available at *Mosby v. Gov't

of V.I.*, D.C. App. Crim. App. No. 1997-0015-01, Appellant's

App. II (hereinafter "Appellant Mosby's App. II"), 33-34.))

At the time, Paniagua was incarcerated for an unrelated

conviction in a facility outside of the Virgin Islands.

After complications arose with transporting Paniagua to

court, the trial court ruled that Paniagua was an

unavailable witness.[6]  (Trial Tr. vol. 2, 7:2-23; Trial Tr.
vol. 3, 9:17-15:17; Trial. Tr. vol. 8, 233:21-24, Aug. 15,
1996.)  Richardson asserts that he satisfied his obligation
to procure Paniagua as a witness through the writ and the
trial court or the Government should have incurred the
additional costs of securing Paniagua's attendance.
Richardson also claims that Paniagua's in-court testimony
would have been favorable and material to his defense, and
that failing to compel him to testify deprived Richardson
of his Sixth Amendment right to compulsory process.  The
Government responds that Richardson and his co-defendants
were responsible for Paniagua's failure to appear at trial
because the writ was prepared improperly, and also that, in
any event, Paniagua's testimony would not have been in
Richardson's favor.  This Court need not consider the trial
court's ruling on Paniagua's availability because it is

---

[6]  During trial, the court learned of procedural errors with
implementing the writ, but these problems were not fatal.  (Trial Tr.
vol. 2, 7:3-10.)  The court was informed that because the U.S. Marshal
Service had not received 30-days of notice, it would cost $7,000.00 to
transport Paniagua to St. Thomas.  (*Id.* at 7:11-23; Trial. Tr. vol. 3,
9:21.)  The trial court was unable to pay and attempted to determine
whether the Defendants or the Government were able to pay, but it did
not rule on the issue.  (Trial Tr. vol. 3, 11:20-15:15.)  The
defendants asserted that they were indigent and that they believed that
it was the Government's obligation to pay the cost of transport.  (*Id.*
at 11:20; Trial Tr. vol. 6, 280:1, Aug. 13, 1996.)  As a result of
these problems, the trial court ruled that Paniagua was an unavailable
witness under Federal Rule of Evidence 804(a)(5).  (Trial Tr. vol. 8,
233:21-24.)

clear from the record that Paniagua's testimony would not
have been material or favorable to the defense.

By its own terms, the Sixth Amendment narrows the
compulsory process right to apply only to "witnesses in [a
defendant's] favor." U.S. Const. amend. VI. The Supreme
Court has further limited the right to testimony that is
"material . . . to his defense." *Mills*, 956 F.2d at 446
(quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858,
867 (1982)). Evidence is material "only if there is a
reasonable likelihood that the testimony could have
affected the judgment of the trier of fact." *Id.* (quoting
*Valenzuela-Bernal*, 458 U.S. at 867). A "reasonable
likelihood" is a "probability sufficient to undermine
confidence in the outcome." *Id.* (quoting *United States v.
Bagley*, 473 U.S. 667, 682 (1985)).

Richardson intended to present Paniagua's testimony to
support his theory that Hodge was killed by VIPD officers
in an effort to prevent Hodge from exposing a narcotics
distribution ring organized by corrupt police officers.
Prior to and during trial, Richardson's counsel stated that
Paniagua would testify to his involvement in the murder of
Officer Hodge, particularly, that he acted as an
intermediary between VIPD officers and a hit man. (Aff. of

Counsel in Supp. of Pet. for Writ of Habeas Corpus ad

Testificandum (available at Appellant Mosby's App. II, 30-

31); (Trial Tr. vol. 6, 284:11-17, Aug. 13, 1996.)  In

support of this proffer, Richardson presented tape-recorded

conversations allegedly between Paniagua and SKS, excerpts

of transcripts of these conversations, and DEA reports

detailing its investigation of Paniagua.  (*See* Trial Tr.

vol. 6, 277:22-84:18; Tape Trs. (available at Appellant

Mosby's App. II, 35-39); DEA Reports (available at

Appellant Mosby's App. II, 42-55.)

The trial court conducted a telephone conference with

Paniagua to test the proffer, during which Paniagua was

represented by counsel and sworn in by the clerk of court.

(Trial Tr. vol. 8, 184:17-85:1.)  The trial court

confronted Paniagua with the substance of the tape

recordings.  Paniagua denied that it was his voice on the

tapes and denied that he made statements to a confidential

informant or anyone else about his involvement in the

murder of Officer Hodge.  (*Id.* at 185:23-87:9.)  Paniagua's

sworn statements reveal that even if compelled into court,

his testimony would not have been material or favorable to

Richardson's defense.

Richardson asserts that the trial court had already
found Paniagua's testimony to be material and relevant when
it issued the writ of habeas corpus ad testificandum, and
committed error by reversing its ruling. Richardson refers
this Court to *United States v. Cruz-Jiminez*, 977 F.2d 95
(3d Cir. 1992), in which the Third Circuit explained that a
decision to issue the writ depends on whether the witness's
testimony is material and relevant. *Id*. at 100. However,
Richardson fails to acknowledge that although the trial
court may have found the *proffered testimony* material and
relevant, this does not end the inquiry with respect to the
*testimony itself.* In *Valenzuela-Bernal*, the Supreme Court
explained that when deciding whether evidence is material,
"courts should afford some leeway for the fact that the
defendant necessarily proffers a description of the
material evidence rather than the evidence itself . . . ."
458 U.S. at 874. But if the evidence itself is available,
the court considers the evidence rather than what was
proffered. *See also Luce v. United States*, 469 U.S. 38, 41
(1984) (finding that, in the context of motions in limine
for impeachment through prior convictions, a trial court's
ruling is subject to change if defendant's actual testimony
differs from what was in the proffer). The trial court

afforded Richardson leeway when it reviewed the proffer and found it to be material and relevant; however, once the court tested the proffer, it was evident that Paniagua's testimony was in fact not material or favorable to the defense.

As Paniagua was not compelled into court, it is clear that Richardson meets the first prong of the *Mills* test as he was deprived the opportunity to present evidence in the form of Paniagua's testimony. However, Richardson fails to meet the second prong of the *Mills* test——that the excluded evidence was material and favorable——because Paniagua denied that it was his voice on the tapes and denied that he made statements regarding his involvement in the murder of Officer Hodge. Richardson has also failed to show that the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purpose as required by the final prong of the *Mills* test. Based on the foregoing, Richardson's claim that the trial court violated his Sixth Amendment right to compulsory process by failing to compel Paniagua to testify at trial fails.

**2. The Tape-Recorded Statements**

Assuming, for purposes of this inquiry only, the propriety of the trial court's decision that Paniagua was

unavailable, Richardson also challenges the trial court's

exclusion of the tape-recorded conversations allegedly

between Paniagua and SKS as a violation of his Sixth

Amendment right to compulsory process.  Like the proffered

testimony, the tape recordings allegedly reveal Paniagua's

involvement in the murder of Officer Hodge.[7]  Having found

Paniagua unavailable, the trial court considered whether

the tape-recorded statements made to SKS were admissible as

statements against interest under Federal Rule of Evidence

804(b)(3), or under the residual hearsay exception, Rule

807.[8]  The trial court excluded the statements as

inadmissible hearsay, concluding that they were not

trustworthy or reliable.  (Trial Tr. vol. 8, 238:3-7,

238:24-39:1.)  Richardson now argues that the trial court

---

[7]  The tapes cannot be located and are not part of the record on appeal.
(*See* Aff. of co-defendant Harris' Appellate Counsel Regarding Missing
Evidence (available at Appellant Mosby's App. II, 88-91).))  According
to the trial court, Paniagua allegedly stated on the tapes that: "(1)
he was approached by three (3) police officers who wanted to hire a
hitman from Puerto Rico to kill Officer Hodge; (2) he acted as a
middleman and set up a meeting at Sugar Bay Beach Resort to discuss the
plans; and (3) the parties allegedly went to the area where Hodge
resided in order to conduct surveillance of the area."  (Judge Meyers's
Nov. 12, 1996 Mem. & Op. 20, Gov't's Supp. App.)

[8]  The transcripts and briefs refer to Rule 804(b)(5) as the residual
hearsay exception.  This rule was transferred to Rule 807 in the 1997
amendments to the Rules of Evidence.  *See* Fed. R. Evid. 807 advisory
committee's note.  We therefore refer to the residual hearsay
exception as Rule 807.

violated his right to compulsory due process when it

excluded the tape-recorded statements. We disagree.

It is undisputed that Richardson satisfies the first

prong of the *Mills* test because the trial court deprived

him of the opportunity to present evidence when it found

the tape-recorded statements inadmissible.

Although Richardson may also be able to demonstrate

that these statements were material and favorable to his

defense, he cannot show that the trial court's

admissibility ruling was either arbitrary or

disproportionate to any legitimate evidentiary interest.

Examining the second prong of the *Mills* compulsory

process test, this Court acknowledges that Paniagua's tape-

recorded statements would have been favorable and material

to Richardson's defense. Unlike the proffered testimony,

the admissibility of the out-of-court statements was not

dependent upon Paniagua's adoption or denial of the

statements. The substance of the tape-recorded statements

could have sufficiently affected the judgment of the jury,

as they implicated individuals other than Richardson and

his co-defendants in the murder of Officer Hodge. *See*

*Mills*, 956 F.2d at 446. Although Richardson satisfies the

second prong of the *Mills* test, his challenge nonetheless

fails because he cannot satisfy the third prong of the test. *See id.*

Because the trial court found Paniagua unavailable, the tape-recorded statements were hearsay and had to qualify as a hearsay exception to be admissible. *See* Fed. R. Evid. 801, 802. Pursuant to Federal Rule of Evidence 804(b)(3), a hearsay statement made by an unavailable declarant can be admitted if, at the time of its making, "it so far tended to subject the declarant to civil or criminal liability . . . that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." Fed. R. Evid. 804(b)(3).[9] The statement must be "sufficiently against [the declarant's] interest so as to be deemed reliable," and this assessment must be made "by viewing [the statement] in context and in light of all the surrounding circumstances." *United States v. Moses*, 148 F.3d 277, 280 (3d Cir. 1998) (quoting *Williamson v. United States*, 512 U.S. 594, 603-04 (1994)). If the statement is offered to exculpate the

---

[9] The pertinent Virgin Islands rule of evidence tracks the federal rule. Pursuant to V.I. Code Ann. tit. 5, § 932(10), a statement against interest is, in pertinent part, a statement that "at the time of the assertion . . . so far subjected him to civil or criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true." V.I. Code. Ann. tit. 5, § 932(10).

accused, it is not admissible "unless corroborating circumstances clearly indicate the trustworthiness of the statement." Fed. R. Evid. 804(b)(3). For purposes of this inquiry, the only question for our review is whether the trial court's decision to exclude the statements for lack of trustworthiness or reliability was made in error.

When examining whether a statement against interest is trustworthy and reliable, a court must conduct a "sensitive analysis of the circumstances in which the statement was made and the precise nature of the statement." *In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 373 (3d Cir. 2004) (quoting *United States v. Boyce*, 849 F.2d 833, 836 (3d Cir. 1988)). In *Chambers v. Mississippi*, 410 U.S. 284 (1973), the Supreme Court found that four factors supported the reliability of the hearsay statements at issue: the statements were made "spontaneously to a close acquaintance"; each statement was "corroborated by some other evidence"; the statements were "in a very real sense self-incriminatory and unquestionably against interest" ; and the declarant was present in the courtroom and could have been subjected to cross-examination. *Id.* at 300-01. Other courts have considered similar factors, including: the relationship between the declarant and the exculpatory

party; whether the statement was voluntary; whether there is any evidence that the statement was made to "curry favor" with authorities; whether the declarant's statements are contradictory; and whether other evidence corroborated the statement. *See, e.g.*, *Moses*, 148 F.3d at 280; *Boyce*, 849 F.2d at 836-37; *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1208 (11th Cir. 2009); *United States v. Jackson*, 540 F.3d 587, 589 (7th Cir. 2008); *see also United States v. Wilson*, 281 F. App'x 96, 98 (3d Cir. 2008) (examining similar trustworthiness factors under Rule 807).

We find that the trial court's decision to exclude Paniagua's statements complied with Rule 804(b)(3). The trial court considered that Paniagua and SKS were not close acquaintances, but were only involved with one another through drug transactions. *See Chambers*, 410 U.S. at 300; *cf. Wright*, 363 F.3d 237, 246 (3d Cir. 2004) (finding statement made in course of confidential relationship as a factor supporting trustworthiness under the residual hearsay exception); *US Infrastructure, Inc.*, 576 F.3d at 1209 (citing cases for proposition that statements in course of close relationship supports finding of trustworthiness). The trial court concluded that Paniagua did not make these statements spontaneously, but only after

being "baited into a conversation about the murder," as the

statements were made during a drug buy unrelated to the

Hodge murder.  (Trial Tr. vol. 8, 237:5-8); *cf. Thomas v.*

*Varner*, No. 02-4778, 2003 WL 22351294, at *7 (E.D. Pa. June

10, 2003) (finding the fact that declarant made statement

against penal interest spontaneously and without

encouragement from anyone as a factor supporting

admissibility), *aff'd*, 428 F.3d 491 (3d Cir. 2005).  The

trial court concluded that in this context, Paniagua would

have a desire to "sound all powerful" to complete the drug

transaction, which weighs against finding the statements

trustworthy.[10]  (Trial Tr. vol. 8, 237:9-11).  Moreover,

while under oath, Paniagua denied that it was his voice on

the tape or that he ever made these statements, which also

casts doubt on the reliability of the tape-recorded

statements.  *See United States v. Smith*, 99 F. App'x 372,

375 (3d Cir. 2004) (considering the fact that the hearsay

statement at issue contradicted a prior statement made by

declarant as a factor against reliability); *United States*

---

[10]  The trial court also considered SKS's reliability in its review of the trustworthiness of the tape-recorded statements; however, this factor should not have been considered in the court's analysis because SKS's statements were not at issue.  *See United States v. Atkins*, 558 F.2d 133, 135 (3d Cir. 1977) (explaining that a court should only consider the credibility of the declarant, not the credibility of the witness who testifies to the declarant's statements; *see also Padilla v. Terhune*, 309 F.3d 614 (9th Cir. 2002) (adopting the *Atkins* rule).

*v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003) (finding that inconsistencies in declarant's statements weighed against a finding of reliability). Finally, the trial court considered the lack of corroborating evidence at trial as a factor weighing against admissibility. In particular, the trial court pointed to the witnesses' testimony that four men were in the vicinity of Hodge's home on the night of the murder, and the evidence that Hodge was shot with four different weapons.[11] (Trial Tr. vol. 8, 237:19-38:1.) The statement on the tape recording that a hitman was hired to kill Hodge is not consistent with this evidence.

Accordingly, we find that the trial court's decision to exclude the tape-recorded statements was not arbitrary or disproportionate to any legitimate interest.[12] *See*

---

[11] We note that the defense presented some evidence that advanced its theory that the VIPD was responsible for the murder of Officer Hodge, including the testimony of Commissioner Angelo Hill, (Trial Tr. vol. 5, 231:2-15), former Attorney General Rosalie Ballantine, (Trial Tr. vol. 6, 48:11-50:13), Sergeant Reynaldo Fraser, (*id*, at 63:1-66:25, 114:6-23, 142:19-45:20), and Kathleen Lundy, a physical scientist with the FBI (Trial Tr. vol. 8, 109:18-10:13, 121:15-22:5). Despite this evidence, the trial court did not abuse its discretion in finding that the tape-recorded statements were not trustworthy in light of the totality of the circumstances, including the sufficiency of the corroborating evidence at trial.

[12] Richardson also challenged the trial court's decision to exclude these statements under the residual hearsay exception, Federal Rule of Evidence 807. The residual hearsay exception is to be "used only rarely, and in exceptional circumstances," and "appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present." *Wright*, 363 F.3d at 246 (internal quotations omitted). Because the tape-recorded statements do not possess sufficient guarantees of trustworthiness to

*United States v. Hoffecker*, 530 F.3d 137, 184 (3d Cir.
2008) ("A defendant's interest in presenting such evidence
may thus bow to accommodate other legitimate interests in
the criminal trial process. . . . [Rules of evidence] do
not abridge an accused's right to present a defense so long
as they are not arbitrary or disproportionate to the
purposes they are designed to serve." (quoting *United
States v. Scheffer*, 523 U.S. 303, 308 (1998))).  Thus,
although the tape-recorded statements may have been
favorable and material to the defense, the trial court's
decision to exclude these statements did not result in a
violation of compulsory process, because the statements
lacked sufficient indicia of reliability.  *See Taylor*, 484
U.S. at 410 (although the right to present a defense is a
"fundamental right," the accused "does not have an
unfettered right to offer testimony that is . . . otherwise
inadmissible under standard rules of evidence").

## B. Corroboration of Coker's Testimony

As a second ground for appeal, Richardson contends
that the trial court erred in admitting the testimony of

---

be admissible under Rule 804(b)(3), the statements are not admissible
under Rule 807, which requires an even higher guarantee of
trustworthiness.

Coker on the grounds that it was not sufficiently corroborated by other evidence.  We disagree.

Whether Coker's testimony has met the standard of corroboration is a legal conclusion based on a factual predicate and our standard of review is accordingly mixed. *United States v. Boynes*, 149 F.3d 208, 211 (3d Cir 1998) *citing Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 103 (3d Cir. 1981).  We must accept the trial court's factual findings unless they are clearly erroneous, but we exercise a plenary review of the trial court's choice of law and interpretation of the law to those facts. *Id*.

We find that the trial court's factual findings with respect to the corroboration of Coker's testimony——namely that there was independent evidence that a shotgun was used in an ambush attach——were properly founded. (Trial Tr. vol. 5, at 44-45.)  Richardson does not dispute these factual findings but rather claims that these facts do not rise to the level of legal corroboration.  We disagree.

In *Opper vs. United States*, 348 U.S. 84 (1954), the Supreme Court held that "[i]t is sufficient if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth.

Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Id.* at 93

Corroboration may be established in a number of ways: "A degree of corroboration may be found in thedetailed nature of the confession itself, or in the recital of facts that would be unknown to anyone other than the criminal." *United States v. Felder*, 572 F. Supp. 17, 22 (E.D. Pa. 1983), aff'd, 722 F.2d 735 (3d Cir. 1983). Essentially, the corroboration rule is satisfied when the witness' recitation of the defendant's confession "dovetails with the evidence adduced by the other witnesses and is circumstantially corroborated by it." *United States v. Coleman*, 862 F.2d 455, 461 (3d Cir. 1988).

In this case, Coker provided detailed testimony as to how Richardson committed the murder:

| | |
|---|---|
| Attorney Davis: | Did he [Richardson] indicate during that discussion how the murder was carried out? |
| Mr. Coker: | He—what he did. |
| Attorney Davis: | Did he tell you how the murder was done? |
| Mr. Coker: | It was an ambush. |
| Attorney Davis: | Did he tell you what he did? |

Mr. Coker:          Yes.

Attorney Davis:     Could you tell the ladies and
                    gentlemen what he told you
                    about how the murder was
                    done?  Please confine your
                    remarks to Mr. Richardson
                    only?

Mr. Coker:          Okay, he told me that they
                    went down to Lindberg and
                    stake out in the bush and –

Attorney Davis:     I believe that -- I am not
                    sure whether the court caught
                    everything.

The Court:          Ask the question again.

Attorney Davis:     Do you remember the question,
                    Sir?

Mr. Coker:          No.

Attorney Davis:     Could you explain – please,
                    tell the Ladies and Gentleman
                    of the jury how Maurice
                    Richardson described to you
                    how the murder happened?

Mr. Coker:          He told me that they went
                    down Lindberg Bay in the
                    bushes and stake out and
                    waited until Hodge came out
                    of his house and shoot him.

Attorney Davis:     Did he tell you about how
                    Officer Hodge came out of the
                    house?

Mr. Coker:          He just came out, not exactly
                    how, no.

| | |
|---|---|
| Attorney Davis: | During that meeting that you had with Maurice Richardson at the time when he told you about his involvement in the murder, did he ask you to do anything. |
| Mr. Coker: | Yes. |
| Attorney Davis: | What did he ask you to do? |
| Mr. Coker: | To hold the shotgun for him. |

(Trial Tr. vol. 5, at 44:14-45:21.)

The forensic evidence presented by the Government makes clear that Hodge was shot fourteen times by four different guns, including a shotgun. (Trial Tr. vol. 3, 61:17.) Sellwood also testified that he observed a long shot gun with the handle sawed off at the "New York's Latest Fashions" store. (Trial Tr. vol. 4, at 65:1-66:4, 68:13-19 .) Pennyfeather also saw two men carrying long guns the night of the murder. (Trial Tr. vol. 1, at 208:6-12, 208:24.) The forensic evidence and testimony of both Sellwood and Pennyfeather Sellwood's thus corroborate Coker's testimony that a shotgun was used in the murder of Hodge. Coker's testimony with respect to the shotgun was also quite detailed in nature as he stated the shotgun was sawed-off with tape on the handle and was approximately 20 to 24 inches in length. (Trial Tr. vol. 5, at 49:4-21.)

Additionally, Coker's statement that Richardson waited in the bushes for Hodge is consistent with other evidence presented by the Government.  Celestine testified that she watched one man hide something in the grass near Hodge's home (Trial Tr. vol 1, at 175:22-176:13, 181:14-16) and Officer Hunt testified that he found a towel which had gun residue in the bushes near the house.  (Trial Tr. vol. 2, at 239:7-240:3; Trial Tr. vol 3, 251:10-15).

Later on in Coker's testimony, he goes into more detail regarding exactly how Richardson killed Hodge.  The testimony is as follows:

| | |
|---|---|
| Attorney Davis: | Now, when Mr. Richardson described how he used the shotgun to kill Officer Hodge, did he tell you where Officer Hodge was or the position he was in when he used the shotgun? |
| Mr. Coker: | Yes. |
| Attorney Davis: | What did he tell you? |
| Mr. Coker: | When Hodge fall on the ground, he went over him and shoot him with the shotgun. |
| Attorney Davis: | While Officer Hodge was on the ground? |
| Mr. Coker: | Yes. |

(Trial Tr. vol 5, at 64:3-12.)

This testimony was corroborated by the testimony of Detective Russo who confirmed that Hodge was shot while he was on the ground:

| | |
|---|---|
| Attorney Davis: | [D]id you come to an opinion about how, or the position he was in and how he was shot? |
| Detective Russo: | Yes, I have. |
| Attorney Davis: | Could you give that? |
| Detective Russo: | It's my opinion that the initial wounds to Officer Hodge were inflicted into the front of Officer Hodge as he faced his assailants.  As he was hit, he moved into a position twisting his body from the right—excuse me, from the left to the right in a clockwise movement going down on to his left knee and then falling flat onto the ground in a prone position face down. |
| | At that time, it was my believe [sic] that both of the entrance wounds and the gunshot wounds were inflicted on Mr. Hodge. |
| Atorney Davis: | And the entrance wounds on the back of the officer, I see that they're going in a particular direction.  Does that suggest anything? |
| Detective Russo: | Yes, it suggests that the assailants were again on top |

|  |  |
|---|---|
|  | of the individual and the individual was in a prone position face down on the ground at the time the entrance wounds were inflicted on the back of Mr. Hodge. |
| Attorney Davis: | Could you define what a prone position is? |
| Detective Russo: | Yes, prone is laying flat, like which would be laying down on the ground, face down. |

(Trial Tr. vol. 3, at 52:3-53:5.)

Richardson's counsel's cross-examination of Detective

Russo did not cast any reasonable doubt on the fact that

Hodge was shot with a shotgun while on the ground.

Richardson's counsel cross-examined Detective Russo as

follows:

|  |  |
|---|---|
| Attorney Adams: | If the testimony reveals that Officer Hodge was lying in a prone position on his right arm, how would you account for the shotgun wound under his right arm? |
| Detective Russo: | If that position was shielding the armpit or the axilla, I would say that was not the position that he was in when he received the shotgun wound. |

(Trial Tr. vol. 3, at 133:9-16.)

This cross-examination does not cast doubt on Coker's testimony because Detective Russo's previous testimony made clear that Hodge was shot while he was lying flat on the ground, not while positioned on his right arm. (Trial Tr. vol. 3, at 52:3-53:5.)

Coker testified that Richardson shot Hodge with the shotgun while standing over him. This testimony was corroborated by other forensic testimony that Hodge was shot by a shotgun from a distance of four or five feet away. (Trial Tr. vol. 3, at 135.)

We find that the Government presented sufficient evidence to corroborate Coker's testimony. The corroboration rule is satisfied when the testimony "dovetails" with the testimony of other witnesses. *Coleman*, 862 F.2d at 461. Here, Coker's testimony that a shotgun was used dovetailed with forensic testimony that a shotgun was used the night of the shooting. Coker's description of the shotgun as sawed off is also supported by the testimony of Sellwood who observed a sawed-off shotgun. Coker's testimony that the shooting was an ambush from the bushes corresponds to the testimony of Celestine who saw a man leave something in the grass by Hodge's home the night of the shooting as well as Officer Hunt who found

a towel which had gun residue in the bushes. (Trial Tr.
vol. 1, at 175:22-176:13, 181:14-16; Trial Tr. vol. 2, at
239:7-240:3; Trial Tr. vol. 3, 251:10-15.) Coker's
testimony that Richardson shot Hodge with the shotgun while
standing over him dovetails with other forensic testimony
that Hodge was shot by a shotgun from close range. (Trial
Tr. Vol. 3, at 134:13-135:13.)

Corroboration may also be established by the detailed
nature of the confession itself. *Felder*, 572 F. Supp. at
22 . Richardson told Coker that that the murder was an
ambush attack where he and others waited in the bushes for
Hodge to come out of his home when they shot him.
Richardson told Coker that when Hodge had fallen to the
ground, he went over the body and shot Hodge with a
shotgun. (Trial Tr. vol. 5, at 44:3-45:24, 64:9-12.) We
find that that the detailed nature of this confession along
with the testimony of both forensic and non-forensic
witnesses are sufficient to justify a jury inference that
Coker's testimony was true.

**C. Sufficiency of the Evidence**

Harris finally contends that insufficient evidence supports
his convictions for murder, conspiracy to commit murder,
and unlawful possession of a firearm.

"A confession, especially one that survives the
multiple attacks that can be made upon its admissibility,
has traditionally been regarded as extraordinarily reliable
evidence of the defendant's guilt." *Gov't of the Virgin
Islands, v. Harris*, 938 F.2d 401, 409 (quoting E. Cleary,
*McCormick on Evidence* § 144 at 364 (3d ed. 1984 &
Supp.1987)). In reviewing a denial of a motion to acquit
based on insufficiency of the evidence, the court will
sustain the verdict if there is substantial evidence,
viewed in the light most favorable to the Government, such
that a rational trier of fact could have found guilt beyond
a reasonable doubt. *Harris*, 938 F.2d at 407. While "the
nexus between the evidence and the guilty verdict must be
logical and convincing," *Gov't of the Virgin Islands v.
Williams*, 739 F.2d 936, 940 (3d Cir. 1984)(citing *United
States v. Bycer*, 593 F.2d 549, 550 (3d Cir. 1979)), the
reviewing court does not weigh the evidence or decide the
credibility of the witnesses, *United States v. Reyeros*, 537
F.3d 270, 277 (3d Cir. 2008). Furthermore, "'[t]he
evidence does not need to be inconsistent with every
conclusion save that of guilt if it does establish a case
from which the jury can find the defendant guilty beyond a

reasonable doubt.'" *Williams*, 739 F.2d at 940 (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957).

### 1.    First Degree Murder

A conviction for first degree murder is supported by evidence establishing the following elements beyond a reasonable doubt: (1) that the individual charged committed murder; and (2) that the murder was perpetrated by any kind of willful, deliberate and premeditated killing. *See generally*, V.I. Code Ann. tit. 14 § 922(a).   Murder is defined as "the unlawful killing of a human being with malice afterthought." *Id.* § 921.   "A deliberate killing is one which has been planned and reflected upon by the accused." *Gov't of the Virgin Islands v. Lanclos*, 477 F.2d 603, 606 (3d Cir. 1973) (citation omitted). "Although the mental processes involved must take place prior to the killing, a brief moment of thought may be sufficient to form a fixed, deliberate design to kill." *United States v. Applewhaite*, 195 F.3d 679, 689-690 (3d Cir. 1999). Evidence of a defendant's state of mind can be proven through the surrounding circumstances of the killing.  *Id.* at 690.

In this case the primary evidence against Richardson was the testimony of Coker which, as noted above, was

sufficiently corroborated by other evidence presented by

the Government. Coker's testimony establishes that

Richardson surveyed the area andwaited in the bushes with

other people before ambushing Hodge and shooting him with a

shotgun. The fact that Richardson surveyed the area and

waited in the bushes shows that the killing was part of a

deliberate plan. The testimony was clear and unequivocal,

and unshaken by two cross-examinations by Richardson's

defense counsel. (Trial Tr. vol 5, at 55:24-61:11, 64:18-

66:21.) As such, we find that the evidence presented

against Richardson was sufficient for a rational trier of

fact to find him guilty of first degree murder beyond a

reasonable doubt.

### 2. Unauthorized Possession of a Firearm

Pursuant to Title 14 V.I.C §2253(a), in order to prove

unauthorized possession of a firearm, the Government needs

to show that Richardson possessed a firearm during the

commission of a crime of violence and that Richardson was

not authorized by law to possess the firearm. Richardson

argues that there was insufficient evidence to prove that

he possessed a firearm.[13] We disagree.

---

[13] Richardson does not argue in his brief that the Government failed to
prove that he possessed a firearm unlawfully. It is a well-established
proposition that such arguments are waived. *See Kost*, 1 F.3d at 182.

The Government brought forth ample evidence to prove
that Richardson possessed a firearm during the commission
of a crime.  Coker testified that Richardson told him that
when Hodge had fallen to the ground, Richardson went over
the body and shot him with a shotgun.  (Trial Tr. vol. 5 at
44:3-45:24, 64:6-9.)  Coker also testified that Richardson
asked him to hold the shotgun that he had used to shoot
Hodge.  (*Id.* at 44:3-45:24, 49:6-7.)  We find that this
corroborated testimony is sufficient to show that
Richardson possessed a firearm during the commission of a
violent crime.

### 3.    Conspiracy to Commit Murder

In order to warrant a conviction for conspiracy to
commit first degree murder, the Government must prove the
following elements beyond a reasonable doubt: (1) two or
more persons conspired to commit murder; and (2) the said
persons intentionally joined in that agreement.  *See* V.I.
Code Ann. tit. 14 § 551.  To establish conspiracy, the
Government must show that the alleged conspirators shared a
(1) unity of purpose, (2) the intent to achieve a common
goal, and (3) an agreement to work together toward the
goal. *Reyeros*, 537 F.3d at 277. Furthermore, "the
government must have put forth evidence tending to prove

that defendant entered into an agreement and knew that the agreement had the specific unlawful purpose charged in the indictment." *Id*. at 278.

However, the elements of conspiracy may be proven entirely through circumstantial evidence. *United States v. Kapp*, 781 F.2d 1008, 1010 (3d Cir. 1986). As noted in *Kapp*, "the existence of a conspiracy can be inferred 'from evidence of related facts and circumstances from which it appears as a reasonable and logical inference, that the activities of the participants ... could not have been carried on except as the result of a preconceived scheme or common understanding.'" 781 F.2d at 1010 (citing *United States v. Ellis*, 595 F.3d 154, 160 (3d Cir. 1979), cert. denied, 444 U.S. 838 (1979)). "Inferences from established facts are accepted methods when no direct evidence is available so long as there exists a logical and convincing connection between the facts established and the conclusion inferred." *United States v. Cartwright*, 359 F.3d 281, 287 (3d Cir. 2004).

The evidence in this case shows that Richardson did participate in a conspiracy to commit murder. Coker's testimony places Richardson at the scene of the crime where he stakes out the area with his other co-defendants, lies

in wait with them and shoots Hodge with them in an ambush attack. (Trial Tr. vol. 5, at 44:3-45:24.) From this evidence, a rational trier of fact could have reasonably inferred that Richardson would not have met with his co-defendants and surveyed the area before ambushing Hodge if there was not some common understanding or scheme to murder Hodge. There was clearly a unity of purpose in waiting together for Hodge in the bushes, and from the fact that they surveyed the area together, the jury could have reasonably inferred that there was also an agreement to ambush Hodge with the common intent of killing him.

## IV.  CONCLUSION

Richardson has failed to allege any errors warranting reversal of his convictions for murder, unauthorized possession, or conspiracy to commit murder. The Court thus affirms Richardson's convictions. An order consistent with this opinion shall follow.